UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PRATT LOGISTICS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:21CV148-PPS/APR |
| | ) |
| UNITED TRANSPORT, INC., | ) |
| CHARLOTTE F. MENDEZ, | ) |
| ERNEST A. FIELDS, and | ) |
| C&E TRANSPORT, INC., | ) |
| | ) |
| Defendants. | ) |

## OPINION AND ORDER

Plaintiff Pratt Logistics is a trucking company for whom defendant Charlotte

Mendez used to work as a shipping manager.  Pratt has filed this lawsuit seeking

damages for a kickback scheme Mendez allegedly engaged in while employed by Pratt.

The complaint alleges that defendant United Transport approached Pratt about

providing shipping services to Pratt, and thereafter, and for the next two years, Mendez

received kickback payments from United for steering work United's way. [DE 1 at

¶¶11-13.]  United's take on things is that they were the victim of Mendez's extortion;

she approached United and demanded money, not the other way around.  Either way,

the payments were made to a shell company—defendant C&E Transport—of which

Mendez and her husband, defendant Ernest Fields, are both shareholders. [*Id*. at ¶¶13,

6, 7.]

The complaint is a blunderbuss of claims: Fraud (Count I against all defendants), Constructive Fraud (Count II against defendant Mendez only), RICO (Count III against all defendants), Corrupt Business Influence (Count IV against all defendants), Conspiracy (Count V against all defendants), Theft (Count VI against all defendants), Conversion (Count VII against all defendants), Deception (Count VIII against all defendants), Crime Victims Compensation Act (Count IX against all defendants), Breach of Duty of Loyalty (Count X against Mendez only), Aiding and Abetting Tortious Conduct (Count XI against defendants United, Fields and C&E Transport), Constructive Trust (Count XII against all defendants), Breach of Implied Covenant of Good Faith and Fair Dealing (Count XIII against Mendez only), and Piercing (Count XIV against Mendez, Fields and C&E Transport).  Now before me are motions to dismiss filed by defendants C&E Transport and United Transport.

### Legal Standards

A motion under Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint "to state a claim upon which relief can be granted."  The Supreme Court interpreted the Rule 12(b)(6) pleading standard in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009).  Ruling on a motion under Rule 12(b)(6), I must accept the truth of the pleading's well-pleaded allegations, and draw all inferences in the light most favorable to the plaintiff.  *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007).  The Rule 12(b)(6) standard requires "a claim to relief that is plausible on

its face," which in turn requires factual allegations sufficient to permit a reasonable

inference that the defendant is liable for the misconduct alleged.  *Twombly*, 550 U.S. 570,

556.

The Seventh Circuit has described *Twombly* as establishing "two easy-to-clear

hurdles," namely that (1) the complaint describe the claim in sufficient detail to give the

defendant fair notice of the claim and the basis for it, and (2) the allegations plausibly

suggest that the plaintiff has a right to relief.  *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084

(7th Cir. 2008), quoting *Equal Employment Opportunity Commission v. Concentra Health

Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).  "Plausibility" in this context does not

empower the court to consider which party's story should be believed, but only that

"the plaintiff must give enough details about the subject-matter of the case to present a

story that holds together."  *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

The Seventh Circuit's general rule is that after a dismissal under Rule 12(b)(6), a

plaintiff is given at least one opportunity to amend the pleading.  *Runnion ex rel.

Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir.

2015).  Unless "it is *certain* from the face of the complaint that any amendment would be

futile or otherwise unwarranted, the district court should grant leave to amend after

granting a motion to dismiss."  *Id.* (emphasis in original).

3

**C&E Transport's Motion to Dismiss**

C&E Transport, the corporation allegedly used by Mendez and Fields as a conduit for the kickback payments made by United Transport, brings what it sees as a straightforward motion to dismiss.  So straightforward that C&E's memorandum, roughly one page in length, cites no legal authority at all. [DE 22.]  C&E argues that because it was administratively dissolved prior to the events that gave rise to Pratt's claims, Pratt fails to state a claim against C&E upon which relief can be granted.  [DE 21 at 1.]  The argument is pithy:  "Dead men can't commit torts.  And neither can dissolved corporations."  [DE 22 at 1.] This is the sole argument pursued in C&E's memorandum in support of its motion.  In the motion itself, C&E makes a second conclusory contention, namely that because it does not currently exist as a legal person, the court lacks jurisdiction over it.  [CE 21 at 1.]

Neither C&E's motion nor its memorandum in support identifies the legal basis for the motion to dismiss, but C&E's reply says the motion is made under Rule 12(b)(6). The second argument briefly stated in the motion asserting a lack of jurisdiction would appear to be made under Rule 12(b)(1) (if about subject-matter jurisdiction) or 12(b)(2) (if about personal jurisdiction).  No jurisdictional argument is further addressed in the supporting memorandum or the reply.  Instead, in its reply, C&E expressly characterizes its principal argument—about its non-existence after dissolution—as "not a jurisdictional issue."  [DE 32 at 1.] Therefore, I will not consider C&E's throwaway

jurisdictional argument other than to say that I have an obligation to police my own

jurisdiction; and there is plainly jurisdiction here.

C&E's more substantive argument is that its dissolution prevented it from

incurring any liability. C&E was an Illinois corporation, and the parties agree that it was

administratively dissolved on October 13, 2017. *See* DE 29-1 at 2. Illinois corporate law

governs whether such a corporation can be sued, and provides that dissolved Illinois

corporations can sue and be sued for a period of five years after the date of dissolution.

*City of South Bend v. Century Indem. Co.*, 821 N.E.2d 5, 11 n.4 (Ind.Ct.App. 2005); 805

ILCS 5/12.80. The parties agree that, pursuant to these principles, C&E could be sued

in this action. [DE 22 at 2; DE 29 at 1.] But C&E argues that because it had been

dissolved before the events on which Pratt's claims are based, C&E "did not exist," and

therefore "could not have been a part of any tortious action described in Plaintiff's

Complaint." [DE 22 at 1, 2.] Setting aside for the moment whether C&E was legally

authorized to take action at the time alleged, the complaint avers that it nevertheless

did take such action: "C&E Transport received the Kickback Payments, which upon

information and belief were then disbursed to Mendez and Fields for their personal

use." [DE 1 at ¶14.]

How do Rule 12(b)(6) standards apply to this situation? I am to accept Pratt's

allegations as true, and give Pratt all favorable inferences from the facts alleged. In the

language of *Twombly*, C&E's argument appears to be that the allegation of action taken

by C&E is not plausible. But the "plausibility" analysis in this context does not

empower me to consider whether Pratt's story should be believed, but only whether the

complaint gives "enough details about the subject-matter of the case to present a story

that holds together." *Swanson*, 614 F.3d at 404.  The complaint plainly meets this

modest standard, and that is enough to defeat C&E's argument for dismissal.

C&E did not take its argument further to address what the applicable law is

concerning actions taken in the name of a dissolved corporation, and where liability

might attach for such conduct.  At the tail end of its reply, C&E briefly discusses the

termination of agency upon the death of a natural person, but does not offer any

analysis of corporate law on the question of potential liability for conduct taken in the

name of a dissolved corporation.  [DE 32 at 2-3.]  Instead, C&E plainly limits its

argument to the factual predicate—"common sense" in C&E's words—that C&E could

not take action because it no longer existed.  [DE 32 at 1.]  But Pratt alleges otherwise,

and at this stage of the proceedings that's all that is needed.

It's worth pointing out that C&E made the same argument for dismissal in a state

court action brought by United Transport against C&E, Mendez and Fields, Cause No.

45D10-2011-CT-001119 in Lake County Superior Court.  [DE 29 at 4.][1]  C&E's motion

before me is verbatim to one it filed in the Lake County case.  [DE 29-2 at 20.]  C&E's

memorandum in support filed here is virtually identical to its reply filed in state court.

---

[1] It is entirely unclear why there are two cases pending — one in state court and one here — that arise out of the same set of operative facts. United could cross-claim against the other defendants in this case and the entirety of this matter would then be handled in one proceeding. Whether the two separate actions could result in inconsistent judgments is an issue the parties will need to consider.

[DE 29-2 at 34-35.]  The Honorable Gina L. Jones denied the motion to dismiss during a case management conference held on May 26, 2021. [DE 29-3 at 2.]  Pratt argues that C&E is collaterally estopped from making the same arguments here.  [DE 29 at 4.]

C&E responds that "the collateral estoppel doctrine only applies to final judgments." [DE 32 at 2.]  That statement is overly limiting in the sense that the doctrine can be applied to particular facts or issues, rather than entire judgments. "Collateral estoppel bars relitigation of a fact or issue where that fact or issue was necessarily adjudicated in an earlier suit and that fact or issue is presented in the subsequent lawsuit." *Indiana Dep't of Env't Mgmt. v. Conard*, 614 N.E.2d 916, 923 (Ind. 1993).  *See also Burns v. Adams County Sheriff*, 1:18cv160, WL 7059833, at *11 (N.D.Ind. 2020) (Lee, J.).  But if what C&E means is that collateral estoppel cannot be applied where the prior court's determination of the fact or issue has not yet become final by the entry of a judgment, there is support for that.  "Issue preclusion requires the prior judgment to have been final." *Jacobs v. Thor Motor Coach, Inc.*, 474 F.Supp.3d 987, 994 (N.D.Ind. 2020) (Leichty, J.), citing *Mains v. Citibank, N.A.*, 852 F.3d 669, 676 (7th Cir. 2017) (applying Indiana law).

So I do not apply collateral estoppel to reject C&E's motion to dismiss, but instead do so on my analysis of its merits, or lack thereof.  But it certainly does not favorably impress me that C&E has recycled a previously unsuccessful argument before me, without acknowledging that it was doing so and without offering a rationale why Judge Jones' denial might have been in error.  C&E's motion to dismiss will be denied.

7

**United Transport's Motion to Dismiss**

United Transport is the vendor who supplied shipping services to plaintiff Pratt

and also allegedly paid kickbacks to Mendez through C&E.  United Transport, which

apparently sees itself as a victim of Mendez's extortion scheme rather than a wrongdoer

in its own right, has filed a motion to dismiss under Rule 12(b)(6) in which it challenges

count by count each cause of action Pratt has leveled against it. While tedious, I take up

each challenged count below in the order in which they appear in the Complaint.


**Fraud – Count I**

United has a three-pronged attack against Pratt's claims of fraud.  Two of the

three prongs are related.  United contends that Pratt fails to allege the circumstances of

fraud in compliance with Fed.R.Civ.P. 9(b).  That rule requires that "[i]n alleging fraud

or mistake, a party must state with particularity the circumstances constituting fraud or

mistake."  The Seventh Circuit has given a practical prescription for this particularity

requirement:  "the complaint must describe the 'who, what, when, where, and how' of

the fraudulent activity to meet the heightened pleading standard demanded by Rule

9(b)."  *Muskegan Hotels, LLC v. Patel*, 986 F.3d 692, 698 (7th Cir. 2021), quoting *Menzies v.*

*Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019).

United identifies the following as Pratt's allegations against United, and

contends that they are insufficient to support a claim of fraud against United.  In about

February 2018 , Pratt began doing business with United, and over the next two years,

United made payments, solicited by Mendez, in exchange for her continued provision of Pratt shipping business to United.  [DE 24 at 11.]  United argues that "Pratt fails to allege the substance of any false representations made to it by United, let alone the time and place they were made, or the actual facts purportedly misrepresented."  [*Id*. at 11-12.]

Pratt doesn't dispute the lack of particularity, and similarly describes the "content of the fraud," which it characterizes this way:  "United Transport provided payments of at least $171,6600 [*sic*] to C&E Transport, an Illinois company, during the entire duration of United Transport's contractual relationship with Pratt Logistics, which it knew were laundered for the personal benefit of Ms. Mendez and her husband, Mr. Fields."  [DE 30 at 6-7.]

Generally speaking, the elements of actual fraud under Indiana law are: 1) false and material misrepresentation of past or existing facts, 2) made with knowledge or reckless ignorance of the falsehood, 3) relied upon by the complaining party, and 4) injury to the complaining party proximately caused by the misrepresentation. *BloomBank*, 113 N.E.3d at 725.  Pratt's complaint does not identify, with or without particularity, any misrepresentation by United to Pratt of past or existing facts.  Pratt's own recap of the basis for its fraud claim does not contain a framework on which, via discovery, it could flesh out false statements of facts by United on which Pratt relied. The allegations are just not of the sort on which a claim of fraud by affirmative misrepresentation can be based.

9

Tacitly acknowledging that it has not pleaded specific misrepresentations with

particularity, Pratt contends that "[f]or common law fraud claims and federal RICO

claims, courts recognize that when one party's silence amounts to misrepresentation,

the injured party is often unable to ascertain specific facts of the scheme outside of

litigation and discovery." [DE 30 at 5, citing *Obiefuna v. Hypotec, Inc.*, 451 F.Supp.3d 928,

947 (S.D.Ind. 2020), and *BloomBank v. United Fidelity Bank F.S.B.,* 113 N.E.3d 708, 721

(Ind.Ct.App. 2018).] This leads to United's related challenge to the fraud claim:

"Liability for fraud due to a failure to disclose information will not arise absent a

fiduciary or other special relationship giving rise to a duty to disclose." [DE 24 at 5.]

Pratt's response is that "silence" sometimes "amounts to misrepresentation." [DE 30 at

5.]

Such a claim, Pratt contends, can be either "omission-based actual fraud" or

"constructive fraud," both of which Pratt acknowledges "are predicated on the

offending party owing the injured party a duty." [DE 30 at 9.] Pratt cites *Wright v.*

*Pennamped*, 657 N.E.2d 1223 (Ind.Ct.App. 1995), in which the Indiana Court of Appeals

held that "silence will not support a claim for actionable fraud absent a duty to speak or

to disclose facts," and that "the party alleging fraudulent concealment has the burden of

demonstrating the existence of a duty to speak." *Id*. at 1231. *BloomBank* explains the

elements of constructive fraud under Indiana law, also requiring a duty arising from a

special relationship:

> (i) *a duty owed* by the party to be charged to the complaining party due to
> their relationship; (ii) violation of that duty by the making of deceptive

10

material misrepresentations of past or existing facts *or remaining silent when a duty to speak exists*; (iii) reliance thereon by the complaining party; (iv) injury to the complaining party as a proximate result thereof; and (v) the gaining of an advantage by the party to be charged at the expense of the complaining party.

113 N.E.3d at 722 (emphasis added).

The duty required can arise in either of two ways, between a buyer and seller, or based on the existence of a fiduciary relationship. *Id.* However, "it is well-established that contractual agreements do not give rise to a fiduciary relationship creating a duty and do not provide a basis for a constructive fraud claim." *Id.* That principle defeats any constructive fraud claim against United, which may explain why the constructive fraud claim in Count II of the complaint names only defendant Mendez. Pratt identifies no basis for concluding that the duty to speak applicable to claims of actual fraud by omission is any different.

Pratt's fraud claim does not allege that there exists a special relationship giving rise to a duty that might make silence the basis for an actionable fraud claim against United. The closest Count I comes is Pratt's allegation that United acted "as a party conducting business with Pratt Logistics." [DE 1 at ¶21.] But Indiana case law is clear that ordinary arms-length contractual relationships do not give rise to a duty to speak. *American United Life Ins. Co. v. Douglas*, 808 N.E.2d 690, 701 (Ind.Ct.App. 2004) (focusing instead on either a fiduciary relationship or buyer/seller relationship giving rise to duty). Pratt cites only cases in which the duty to disclose was found based on a

11

fiduciary relationship or a buyer/seller relationship.  [DE 30 at 10.[2]]  For both its failure

to meet the particularity requirement of Rule 9(b) and to plead facts that could support

a duty to speak, as required for a claim of fraud by omission, Count I will be dismissed

as against defendant United Transport.


**Federal and State Racketeering Claims – Counts III and IV**

Count III of the complaint alleges that the defendants conducted the affairs of an

enterprise through a pattern of racketeering for the purpose of defrauding Pratt and did

so in a manner that violated the federal Racketeer Influenced and Corrupt Organiza-

tions Act, 18 U.S.C. §1962(c).  [DE 1 at ¶¶33-43.]  In Count IV, Pratt alleges that the

defendants' participation in the activities of an enterprise through a pattern of

racketeering activity also constituted the commission of corrupt business influence

under Indiana Code §35-45-6-2.  [*Id.* at ¶¶44-51.]  The enterprise alleged in both counts

is an "association-in-fact" formed by United, Mendez, Field and C&E.  [*Id.* at ¶¶36, 48.]

United contends that Pratt's pleading fails to support the existence of an "enterprise" as

required for liability under either the federal or state statute.

The parties agree that the Indiana statute is modeled after the federal RICO

statute, so that judicial interpretation of the federal "enterprise" requirement applies to

---

[2] Broad dictum such as that found in *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993), is not to the contrary.  In *Midwest*, the district court's dismissal rationale was reviewed based on a pre-*Twombly* Rule 9(b) analysis and for lack of damages.  Judge Posner's discussion of fraud by omission was not actually applied to the case, and none of the cases he cites for his generalizations about fraud by omission are analogous to this case.

the Indiana statute as well, but nonetheless disagree on what the law requires. [DE 24

at 12; DE 30 at 13.] *See, e.g., In re Eastern Livestock Co., LLC v. Zeien*, Bankr. No. 10-93904-

BHL-11, 2013 WL 6048813, at *9 (S.D.Bankr. Nov. 15, 2013); *Decatur Ventures, LLC v.*

*Stapleton Ventures, Inc.*, 373 F.Supp.2d 829, 846 (S.D.Ind. 2005). An "enterprise" as

defined in 18 U.S.C. §1961 is "an entity," "proved by evidence of an ongoing

organization, formal or informal, and by evidence that the various associates function

as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

Turkette also teaches that a RICO enterprise "is an entity separate and apart from

the pattern of activity in which it engages." *Id*. The Seventh Circuit has explained this

same principle: "A RICO enterprise is more than a combination of persons who commit

alleged predicate acts of racketeering; 'there must be "an organization with a structure

and goals separate from the predicate acts themselves."'" *Chrichton v. Golden Rule Ins.*

*Co.*, 576 F.3d 392, 400 (7th Cir. 2009), quoting *Stachon v. United Consumers Club, Inc.*, 229

F.3d 673, 675 (7th Cir. 2000), with internal citation to *United States v. Masters*, 924 F.2d

1362, 1367 (7th Cir. 1991). The lack of allegations that the enterprise has such a separate

structure and goals is a basis for dismissal of a RICO claim. *Chrichton*, 576 F.3d at 400.

Pratt responds that the RICO enterprise standards have evolved since *Turkette*,

citing *Boyle v. United States*, 556 U.S. 938 (2009). [DE 30 at 2.] *Boyle* reiterates *Turkette*'s

holding that "the existence of an enterprise is an element distinct from the pattern of

racketeering activity." *Boyle*, 556 U.S. at 947. But *Boyle* cautions that "an association-in-

fact enterprise is simply a continuing unit that functions with a common purpose," and

additional particular elements such as a hierarchy, a chain of command, role

differentiation, and involvement in other crimes besides the predicate acts are not

necessary.  *Id.* at 947-8.  Only three structural features are required for an association-in-

fact enterprise under RICO:  "a purpose, relationships among those associated with the

enterprise, and longevity sufficient to permit these associates to pursue the enterprises's

purpose."  *Id.* at 947.

By this measure, the enterprise appears to have been adequately pleaded.  For

the purpose of engaging in the alleged kickback scheme over the course of several

years, the four members were related by the shared profit of Mendez and Fields

through their conduit company, to which Mendez directed the kickback payments by

United in exchange for benefits Mendez was in a position to award.  The sufficiency of

this as an association-in-fact enterprise per *Boyle* accords with other judges who, since

*Boyle*, have refrained from imposing more stringent requirements on the pleading of a

RICO enterprise.  *See United Food and Commercial Workers Unions, et al. v. Walgreen Co.*,

719 F.3d 849, 854 (7th Cir. 2013); *Jay E. Hayden Foundation v. First Neighbor Bank, N.A.*, 610

F.3d 382, 389 (7th Cir. 2010); *Obiefuna v. Hypotec, Inc.*, 451 F.Supp.3d 928, 950 (S.D.Ind.

2020).  Dismissal of Counts III and IV will be denied.


**Theft and Conversion – Counts VI and VII**

The theft claim in Count VI of the complaint cites Ind. Code §35-43-4-2, and

identifies the property in question as "funds, credits and/or benefits that would have

14

otherwise been provided to Pratt" and also "the benefits of Mendez's loyal and honest service." [DE 1 at ¶62.] Count VII contains the claim for conversion under Ind. Code §35-43-4-3, and uses the same description of the relevant property. United contends that Pratt fails to state claims for either theft or conversion under Indiana law because Pratt does not allege the existence of property in which Pratt had an ownership interest, or United's exercise of unauthorized control over Pratt's property. [DE 24 at 16.] Yet the complaint does just that. [DE 1 at ¶¶ 15, 61, 65.]

The definition of "property" in §35-31.5-2-253(a) is, as United admits, extremely broad, encompassing any "gain or advantage or anything that might reasonably be regarded as such by the beneficiary" (*see* (a)(1)), as well as "intangibles" (*see* (a)(3)). Pratt claims that the value of Mendez's loyalty, honesty and judgment and its lost profits resulting from the scheme fall within Indiana's very broad definition of property for purposes of theft and conversion claims. [DE 30 at 20-21.] Pratt's theory is that, but for Mendez's disloyalty, Pratt would have been able to obtain shipping services on more favorable terms, and that United's willingness to engage in the kickback scheme deprived Pratt of loyal and honest service from Mendez.

At the dismissal stage, the pleading of Counts VI and VII passes *Tamayo*'s "two easy-to-clear hurdles," by describing the claims of theft and conversion in sufficient detail to give the defendant fair notice of the claims and the basis for them, and by plausibly suggesting that the plaintiff has a right to relief. Whether the proof will

15

ultimately be persuasive on Pratt's theories remains to be seen, but United fails to

demonstrate that the claims are insufficient on their face.

**Deception – Count VIII**

Prior to its repeal as of July 1, 2021, §35-43-5-3(a)(2) of the Indiana Code defined

"deception" to include "knowingly or intentionally mak[ing] a false or misleading

written statement with intent to obtain property...."  In Count VIII, Pratt invokes that

provision and alleges that the defendants committed such deception by "represent[ing]

to Pratt Logistics that the business dealings with United were true, arms-length

transactions undertaken in good faith," when they were in fact "littered with fraud and

deception."  [DE 1 at ¶¶69, 70, 71.]  United, citing the requirement of a writing, moves

to dismiss the deception claim on the ground that Pratt fails to allege "that United made

a false statement *in a written communication* to Pratt, or to anyone else."  [DE 24 at 19

(emphasis added).]

Pratt's lame response is essentially "does so!"  Pratt points me to four paragraphs

of its complaint (¶¶1, 4, 30 and 56) where it makes reference to "contracts" with United.

But these references merely generally describe the existence of contracts between

United and Pratt, and do not indicate that the contracts were in writing, much less

provide any particular facts that plausibly support an inference that any of those

contracts constituted a false or misleading written statement by United intended to

16

obtain property from Pratt.  Because the elements of the deception theory are not met

by facts pleaded in the complaint, Count VIII fails to state a claim.

## Crime Victims Compensation Act – Count IX

A civil claim under Indiana's Crime Victims Compensation Act can be brought

by a person who "suffers a pecuniary loss as a result of a violation of IC 35-43...,"

referring to the article of Indiana's criminal code defining offenses against property,

including theft, conversion and deception.  I.C. §34-24-3-1.1.   United makes the

derivative argument that Count IX is subject to dismissal because Pratt has failed to

state claims for those underlying property crimes.  Because I am persuaded that only

the deception count, and not the theft or conversion counts, are subject to dismissal,

United's argument for dismissal of the Crime Victims Compensation Act claim fails.

## Aiding and Abetting Tortious Conduct – Count XI

Pratt's Count XI alleges that United, Fields and C&E Transport aided and

abetted Mendez in the breach of the duties she owed to Pratt, including a fiduciary duty

of undivided loyalty.  [DE 1 at §82, 84.]  United moves to dismiss Count XI on the basis

that several Indiana courts have held that Indiana law does not recognize a claim for

aiding and abetting a breach of fiduciary duty.  [DE 24 at 21.]  *Crystal Valley Sales, Inc. v.*

*Anderson*, 22 N.E.3d 646, 656 (Ind.Ct.App. 2014) ("Indiana does not recognize such a

cause of action"), citing *DiMaggio v. Rosario*, 950 N.E.2d 1272, 1274 (Ind.Ct.App. 2011).

Pratt's citation to federal decisions pre-dating the plain statement of the Indiana Court of Appeals in *Crystal Valley Sales* do not spare the claim from dismissal, nor does a more recent federal decision that overlooked *Crystal Valley Sales*.  [DE 30 at 18-19.]  Because a claim for aiding and abetting breach of fiduciary duty is not recognized in Indiana law, Count XI will be dismissed for failure to state a claim.

**Conspiracy – Count V**

In Count V, Pratt alleges that the four defendants "engaged in concerted action to defraud Pratt Logistics, and to engage in certain tortious acts, all with the aim to intentionally and tortiously deprive Pratt Logistics of money and property."  [DE 1 at ¶53.]  United argues that Pratt fails to state a conspiracy claim in Count V because an actionable conspiracy requires the pleading of an underlying tort by each alleged conspirator.  [DE 24 at 22-23.]  This is another derivative argument—that the conspiracy claim fails because the underlying torts have been shown to fail.

In response, Pratt clarifies that the civil conspiracy claim is predicated on the underlying claims for fraud and for aiding and abetting Mendez's breach of fiduciary duties.  [DE 30 at 17.] Because I have found that Count I for fraud and Count XI for aiding and abetting the breach of fiduciary duty each fail to state a claim upon which relief can be granted, Count V based on an alleged conspiracy to commit those wrongs will also be dismissed.

**Constructive Trust – Count XII**

In Count XII, Pratt seeks the imposition of a constructive trust on any funds

recovered by the defendants as "restitution from any of the other defendants [or] any

other source in relation to the Kickback Scheme." [DE 1 at ¶88.] The focus of the

parties' arguments on the motion to dismiss is any recovery United might receive in its

own separate lawsuit against Mendez, Fields and C&E. The arguments are not about

the adequacy of Pratt's pleading, but about the equities of United being unjustly

enriched by such a recovery even though it is an alleged wrongdoer in the same

Kickback scheme. This argument about the merits of such a remedy provides no basis

for dismissal of Count XII for failure to state a claim.


**Conclusion**

C&E Transport's motion to dismiss will be denied. United Transport's motion

will be granted in part as to Count I for fraud, Count V for conspiracy, Count VIII for

deception and Count XI for aiding and abetting the breach of Mendez's fiduciary duty.

A plaintiff whose complaint has been dismissed should generally receive "at least one

opportunity to amend." *O'Brien v. Village of Lincolnshire*, 955 F.3d 616, 628 (7th Cir.

2020). United Transport will be granted leave to amend its complaint if it believes by

doing so it can overcome the defects that support dismissal of these four counts.

Counts III, IV, VI, VII, IX, and XII remain pending against United Transport.

**ACCORDINGLY:**

Defendant C&E Transport, Inc.'s Motion to Dismiss [DE 21] is DENIED.

Defendant United Transport, Inc.'s Motion to Dismiss [DE 23] is GRANTED IN

PART as to Counts I, V, VIII, and XI of the complaint.  In all other respects, the motion

is DENIED.

Plaintiff Pratt Logistics is granted 21 days in which to file a first amended

complaint attempting to replead the dismissed counts.

**SO ORDERED.**

ENTERED: September 22, 2021.

> /s/   Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT