UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| PRATT LOGISTICS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) CAUSE NO. 2:21CV148-PPS |
| | ) |
| UNITED TRANSPORT, INC., | ) |
| CHARLOTTE F. MENDEZ, | ) |
| ERNEST A. FIELDS, and | ) |
| C&E TRANSPORT, INC., | ) |
| | ) |
| Defendants. | ) |

**OPINION AND ORDER**

Pratt Logistics is a trucking company which, for a time, used United Transport for shipping services. In its amended complaint, Pratt claims that United was making kickback payments to a company (C&E Transport) owned by a Pratt employee named Charlotte Mendez and her husband, Ernest Fields. In exchange, Mendez provided United valuable shipping contracts. When Pratt Logistics discovered this kickback scheme, it fired Mendez and also terminated its business relationship with United.

In an opinion dated September 22, 2021, I ruled on United's motion to dismiss a number of claims in Pratt's original complaint. [DE 46.] The motion was granted in part. [*Id*. at 20.] Counts I, V, VIII, and XI of the complaint were dismissed for failure to state a claim, and Pratt was granted 21 days "in which to file a first amended complaint attempting to replead the dismissed counts." [*Id*.] Subsequently, Pratt amended its

complaint. [DE 54.] United is back with a motion to dismiss challenging a number of counts of the Amended Complaint. [DE 57.]

## **Legal Standards**

A motion under Fed.R.Civ.P. 12(b)(6) challenges the sufficiency of the complaint "to state a claim upon which relief can be granted." The Supreme Court interpreted the Rule 12(b)(6) pleading standard in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Ruling on a motion under Rule 12(b)(6), I must accept the truth of the pleading's well-pleaded allegations, and draw all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007). The Rule 12(b)(6) standard requires "a claim to relief that is plausible on its face," which in turn requires factual allegations sufficient to permit a reasonable inference that the defendant is liable for the misconduct alleged. *Twombly*, 550 U.S. 570, 556.

The Seventh Circuit has described *Twombly* as establishing "two easy-to-clear hurdles," namely that (1) the complaint describe the claim in sufficient detail to give the defendant fair notice of the claim and the basis for it, and (2) the allegations plausibly suggest that the plaintiff has a right to relief. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008), quoting *Equal Employment Opportunity Commission v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). "Plausibility" in this context does not empower the court to consider which party's story should be believed, but only that

"the plaintiff must give enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).

United's motion has sparked a quarrel between the parties as to the limits on a second motion to dismiss. As both parties know by now (*see* Opinion and Order of 2/2/2022, DE 64 at 1), an amended pleading entirely supersedes its predecessor. Obviously new and different claims are subject to a new motion to dismiss, regardless of whether a motion to dismiss was previously filed. If the same arguments for dismissal are levied against the same claims as previously pled, I may give the arguments short shrift as an unsuccessful request for reconsideration unless I am persuaded my earlier reasoning was in error.

But what am I to do with new arguments made for the first time against claims that were pled in the original complaint? The Seventh Circuit answered that question when it held that "a litigant need not consolidate all failure-to-state-a-claim arguments in a single dismissal motion." *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012). Other Circuit Courts of Appeal disagree with the Seventh Circuit's analysis of Fed.R.Civ.P. 12, but in a hierarchical system of courts, I am bound of course by the Seventh Circuit's view of the matter. *See In re Apple Iphone Antitrust Litig.*, 846 F.3d 313, 318 (9th Cir. 2017); *Leyse v. Bank of America Nat'l Assn*, 804 F.3d 316, 321 (3rd Cir. 2015); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 703 (10th Cir. 2014); and *English v. Dyke*, 23 F.3d 1086, 1090-91 (6th Cir. 1994). I will therefore give such consideration as is appropriate to all arguments raised in the present motion. Nonetheless, it's worth

3

mentioning that serial motions to dismiss slow the proceedings, and I see no reason why United couldn't advance all its arguments the first time around. In all events, I will not be inclined to entertain a third motion to dismiss from United unless Pratt is granted leave to amend its complaint for a second time, something I am also disinclined to permit.

### United Transport's Motion to Dismiss

From a fairly straight-forward set of facts, an octopus of claims has spawned. I described Pratt's original complaint as a "blunderbuss" and now, in the amended complaint, Pratt has somehow managed to *increase* the number of counts from 14 to 16. [DE 54.]  United's motion to dismiss targets seven of Pratt's claims.

### Federal and State Racketeering Claims – Counts III and IV

Count III of the Amended Complaint, a federal RICO claim, is brought under 18 U.S.C. §1962(c), and alleges that the four defendants formed "an association-in-fact for the common and illegal purpose of implementing and continuing the Kickback Scheme, thereby constituting an enterprise (the "Enterprise") for the purposes of 18 U.S.C. §1962(c)" and made "repeated use of the U.S. Mail and interstate wires" in furtherance of the scheme.  [DE 54 at ¶¶46, 49.]  Count IV is brought under the Indiana Corrupt Business Influence statute, Ind. Code §35-43-4-2, and is based on different allegations, namely that the defendants "committed more than two instances of theft...from Pratt Logistics."  [DE 54 at ¶55.]  In its earlier motion to dismiss, United argued that Pratt's complaint failed "to support the existence of an 'enterprise' as required for liability

4

under either the federal or state statute." [DE 46 at 12.] I rejected the argument, finding that Pratt's pleading of an association-in-fact enterprise was adequate. [*Id*. at 14.] In the current motion, United challenges the racketeering claims on three grounds: that no RICO predicate act by United has been pleaded, that the RICO enterprise is not distinct from the defendants, and that there is no pattern of racketeering activity. [DE 58 at 3.]

The RICO claim in Count III alleges that all the defendants "agreed to and did conduct and participate in conducting the affairs of the Enterprise through a pattern of racketeering activity and for the unlawful purpose of defrauding Pratt Logistics[.]" [DE 54 at ¶47.] Paragraph 49 of the Amended Complaint alleges in support of the federal RICO claim that "the repeated use of the U.S. Mail and interstate wires in furtherance of the Kickback Scheme constitutes a pattern of racketeering activity." [DE 54 at 13.] Construing this as alleging wire fraud as a predicate act of racketeering, United argues that Pratt fails to allege any predicate act *by United*, more specifically because Pratt has not alleged any misrepresentation by United. [DE 58 at 3.] United does not suggest that the RICO claim is insufficient against the co-defendants, but only that it lacks necessary allegations of United's conduct in particular.

Although liability under §1962(c) is not limited to the upper management of an enterprise, it does require participation in the operation of management of the enterprise itself. *Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961, 963-64 (7th Cir. 2000) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)). Section 1962(c) liability

5

"only applies to those who participate in the conduct of the enterprise through a pattern of racketeering activity," and "[a]greeing to participate somehow in an enterprise is active; it is personal." *Brouwer*, 199 F.3d at 966. Pratt's complaint must "plead sufficient facts to show that [United] engaged in a pattern of racketeering activity," which means "at a minimum...two predicate acts of racketeering." *Slaney v. The Intern'l Amateur Athletic Federation*, 244 F.3d 580, 598-99 (7th Cir. 2001). And where the predicate racketeering acts are alleged to be wire fraud, the pleading is subject to the particularity requirements of Fed.R.Civ.P. 9(b). *Id*. at 599. This means that Pratt "must allege the identity of the person who made the representation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id*.

How is United alleged to have participated in conducting the affairs of the enterprise? The most specific allegation of conduct in Count III is the "repeated use of the U.S. Mail and interstate wires" previously mentioned. [DE 54 at ¶¶19, 49.] The allegation does not specify the who, when, where or what of the conduct, and is even indefinite as to the method of communication (mail or wire). Pratt cannot deliberately plead only vague references to the use of the mail and interstate wires in furtherance of the Kickback scheme, without expressly calling it fraud, in order to skirt the particularity requirements of Fed.R.Civ.P. 9(b). The use of mail and wire communication constitutes racketeering activity under 18 U.S.C. §1961(1) only if alleged to be mail fraud and wire fraud under subsection (1)(B). In response to United's

6

motion, Pratt acknowledges that its RICO claim is based on an allegation that the defendants committed mail and wire fraud.  [DE 62 at 2.]

Nearly conceding that Count III does not allege particular predicate acts of fraud by United, Pratt cites RICO conspiracy cases to support the idea that "a RICO claim can exist independent of a fraud claim" against the same defendant.  [DE 62 at 10.]  One example is *Empress Casino Joliet Corp. v. Balmoral Racing Club, Inc.*, 831 F.3d 815, 823 (7th Cir. 2016): "[a] RICO conspirator need not agree to commit personally two predicate acts in furtherance of the enterprise; rather, he must agree that someone will commit them." But Count III does not allege a RICO conspiracy, but a substantive claim of RICO under §1962(c).  Only later in the civil conspiracy claim in Count V does the Amended Complaint allege that:  "All Defendants conspired to acquire and maintain the Enterprise and engaged in a pattern of racketeering activity in violation of 18 U.S.C. §1962(d)."  [DE 54 at ¶68.]

Pratt's federal RICO claim is insufficient in pleading predicate acts committed by United, and as a result Count III is subject to dismissal as against United.  I will add that there is another problem with the amended complaint as it relates to the pattern requirement.  Long ago, the Seventh Circuit started to look askance at RICO cases where mail and wire fraud were the underlying acts of racketeering. "The Seventh Circuit, however, does not look favorably on relying on many instances of mail and wire fraud to form a pattern." *Vicom, Inc. v. Harbridge Merchant Services, Inc.*, 20 F.3d 771, 781 (7th Cir. 1994) (quoting *Hartz v. Friedman*, 919 F.2d 469, 473 (7th Cir. 1990)).  *See also*

7

*Jennings v. Auto Meter Products, Inc.*, 495 F.3d 466, 475 (7th Cir. 2007); *United States Textiles, Inc. v. Anheuser-Busch Companies, Inc.*, 911 F.2d 1261, 1268 (7th Cir. 1990).

An example will help amplify the point. Suppose someone is running a phony investment scheme but the scheme has only one victim. The perpetrator mails ten bogus account statements to the victim with the intent of lulling her into a false sense of security that her investments are safe. Even though there are ten separate acts of mail fraud, that does not constitute a pattern because there is only one victim and one scheme. But suppose instead that the perpetrator is doing everything in my first example but is also using his business to conduct a check kiting scheme (and uses the mails in the scheme). That might constitute a pattern because it involves different schemes and different victims, although committed by the same enterprise. Our case is much closer to the first example: we have one victim and one scheme, although it has been committed with a number of mailings and use of interstate wires. This is not a pattern as the Seventh Circuit has described it. For this reason, and for the other reasons discussed above, the federal RICO claim in Count III as against United must be again dismissed.

The analysis is different for the Indiana Corrupt Business Influence claim in Count IV. Rather than mail and wire fraud, the Indiana Corrupt Business Influence claim is based on the commission of theft from Pratt Logistics, as separately alleged in Count VI. [DE 54 at ¶55.] More specifically as to defendant United, Count IV alleges that "United received proceeds from the pattern of racketeering activity, namely

8

business and profits from Pratt Logistics." [*Id*. at ¶56.] In arguing its motion, United fails to give separate consideration to the different predicate acts alleged to make up the pattern of racketeering activity actionable under the Indiana statute. [DE 58 at 3.] So United does not present an argument that the Indiana claim in Count IV fails to state a claim for failure to adequately allege United's commission of predicate acts.

Pratt disputes that United's two other arguments – concerning distinctness between the enterprise and the defendants, and the continuity plus relationship test for predicate acts – have equal application to the Indiana statute. [DE 62 at 8, n.2 and 14.] As to the first, Pratt points out that United does not address Pratt's position that Indiana's statute "does not require an enterprise," but also prohibits receiving proceeds from a pattern of racketeering activity to acquire an interest in property, entirely apart from the existence or operation of an "enterprise." [DE 62 at 8, n.2, citing *Atwood v. State*, 172 N.E.3d 678, 683 (Ind.Ct.App. 2021).] Concerning the U.S. Supreme Court's continuity plus relationship test, Pratt cites *Jackson v. State*, 50 N.E.3d 767, 771 (Ind. 2016), in which the Indiana Supreme Court discussed differences between the state and federal statutes, noting that Indiana's "complete and self-contained" definition of "pattern of racketeering activity" does not contain an element of continuity. [DE 62 at 14.] In reply, United does not address Pratt's contentions about how Indiana law differs from the federal RICO statute, and so does not attempt to demonstrate that its arguments defeat the Indiana claim in Count IV. [DE 63.] The motion to dismiss will be denied as to the Indiana Corrupt Business Influence claim in Count IV.

**<u>Conversion – Count VII</u>**

In Count VII, the Amended Complaint alleges that the defendants converted two types of property – (1) "funds, credits and/or benefits that would have otherwise been provided to Pratt Logistics," and (2) "the benefits of Mendez's loyal and honest service." [DE 54 at ¶77.] United contends that the first type of property does not support a viable conversion claim "because Pratt lacks an immediate, unqualified possessory interest over such funds." [DE 58 at 9.] United cites Justice Boehm's concurrence in *Conwell v. Gray Loon Outdoor Mktg. Grp.*, 906 N.E.2d 805 (Ind. 2009): "An essential element of either conversion claim [criminal or civil] is an 'immediate, unqualified right to possession resting on a superior claim of title.'" *Id*. at 817, quoting *Shourek v. Stirling*, 621 N.E.2d 1107, 1109 (Ind. 1993).

As the *Conwell* majority opinion put it, lack of ownership of the property "makes short work" of a conversion claim. 906 N.E.2d at 816-17. *See also Allen v. American Commercial Barge Line LLC*, 2019 WL 4572796, at *7 (S.D.Ind. Sept. 20, 2019) (without entitlement to severance benefits there could be no conversion, citing *Shourek*). Although this sounds like a summary judgment argument, because the facts asserted in Count VII for conversion expressly allege a type of property that was not immediately and unqualifiedly owned by Pratt, it fails to state a claim under Indiana law for conversion of that property. The contingent nature of the benefits "that would have otherwise" accrued to Pratt is inadequate under Indiana's tort of conversion.

United also argues that Pratt has acknowledged that the "funds, credits and/or benefits" referred to in Count VII are lost profits. [DE 58 at 10, citing DE 30 at 21.] The Indiana Court of Appeals has explained that "[m]oney may be the subject of an action for conversion, so long as it is capable of being identified as a special chattel," which means that "the money 'must be a determinate sum with which the defendant was entrusted to apply to a certain purpose.'" *Clark-Silberman v. Silberman*, 78 N.E.3d 708, 715 (Ind.Ct.App. 2017), quoting *Huff v. Biomet, Inc.*, 654 N.E.2d 830, 835 (Ind.Ct.App. 1995), abrogated on other grounds by *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699 (Ind. 2002). Because the amount of Pratt's lost profits is inherently indeterminate, it does not constitute a special chattel and cannot support an action for conversion. "To qualify as special chattel and be subject to a conversion action, money must be a 'determinate sum.'" *LEJ Mgmt, LLC v. Morris Invest, LLC*, No. 1:19-cv-02662-TWP-TAB, 2020 WL 5095450, at *9 (S.D.Ind. Aug. 28, 2020). This is a second reason that the claim that United converted "funds, credits and/or benefits" in the nature of lost profits is subject to dismissal. For these several reasons, Pratt fails to state a claim for conversion under Indiana law based on United's alleged theft of "funds, credits and/or benefits that would have otherwise been provided to Pratt Logistics." [DE 54 at ¶73.]

United next contends that Mendez's "loyal and honest service" is also not the sort of property that can support a conversion claim. The statutory definition of conversion requires that the defendant exerted "unauthorized control over property of another person." Ind. Code §35-43-4-3(a). [DE 58 at 13.] To "exert control over

11

property" is defined as "to obtain, take, carry, drive, lead away, conceal, abandon, sell, convey, encumber, or possess property, or to secure, transfer, or extend a right to property." Ind. Code §35-43-4-1(a). Considering this definition, United argues that "most of [these words] are clearly inapplicable to the facts as pled." [DE 58 at 13.] Contemplating "encumber" as the only possible definitional term, United cites *An-Hung Yao v. State*, 975 N.E.2d 1273 (Ind. 2012), a case about theft of trademarks, and argues merely that Pratt has found no authority for the idea that "a proprietary interest in an employee's 'honest service' can be encumbered." [DE 58 at 14-15]. United's reliance on *An-Hung Yao* is especially puzzling, given that there the Indiana Supreme Court found that the trial court had *properly denied* a motion to dismiss because the question whether the defendants did "obtain, take, carry, sell, convey, encumber, or possess property" was a question of fact "that cannot be determined on a motion to dismiss." 975 N.E.2d at 1282.

Finally, United likens Mendez's loyal services to the potential clients allegedly pilfered in *Hertel v. Action Technologies Group, Inc.*, No. 1:20-cv-01748-TWP-DLP, 2021 WL 790632, at *3 (S.D.Ind. March 2, 2021). [DE 58 at 15.] The *Hertel* court denied leave to add a claim for conversion because it was unpersuaded that "New Clients" were "the type of property over which a party can exert control, for purposes of conversion." *Id.* The court also held that if the value of the potential clients was understood as income, that the financial benefit was an indeterminate sum and so not a special chattel for purposes of a conversion claim. *Id.* at *4. United argues that the alleged conversion of

12

Mendez's services is analogous to the claim in *Hertel* based on the loss of potential clients. [DE 58 at 16.]

*Hertel* offers little analysis of its conclusion that prospective clients are not a "type" of property that can support a conversion claim. To the extent the opinion suggests that only personal property can be the subject of conversion [*id*. at *3], that is clearly wrong. *See*, *e.g.*, *Heckler and Koch, Inc. v. German Sport Guns GmbH*, No. 1:09-cv-00039-WTL-JMS, 2009 WL 3200587, at *1 (S.D.Ind. Sept. 25, 2009) ("while these things are intangible, they are things of value to the Plaintiff in which the Plaintiff has a property interest; therefore, they constitute property as defined by Indiana law and are subject to conversion by another"). As I noted in my earlier opinion, the relevant Indiana statute defines "property" quite broadly, to include any "gain or advantage or anything that might reasonably be regarded as such by the beneficiary," as well as "labor" and "intangibles." Ind. Code §35-31.5-2-253(a)(1), (2) and (3). [DE 46 at 15.] Absent the reference to the *Hertel* case, this argument is essentially a do-over from United's previous motion to dismiss. *See* DE 24 at 18. And it is no more successful now than it was then.

In an effort to liken Pratt's loyal services claim to the potential clients in *Hertel*, United contends that in essence Pratt seeks the "compensation received by Mendez during the period of her disloyalty," an indeterminate amount that can't be the basis for a claim of conversion. [DE 58 at 16.] United cites a dozen paragraphs of Pratt's Amended Complaint that use that phrase to describe a measure of damages. [*Id*.] But

13

that language *does not* appear in the counts alleging conversion or theft, though it is referred to in a general prayer for relief and in the claims alleging 11 other torts. [DE 54 at ¶¶3, 29, 35, 42, 53, 61, 70, 89, 96, 104, 115, 122.] The conversion claim can't be dismissed based on a theory ascribed to it by United but not actually pled by Pratt.

In sum, while I remain skeptical about a conversion claim premised on the theft of honest services, based on the unpersuasive arguments put forth by United, the claims must survive a motion to dismiss. Of course, once discovery takes us from the world of allegations and into the world of facts, the matter can be revisited on summary judgment.

**Theft – Count VI**

Assuming its success against the conversion count, United argues that the theft claim is also subject to dismissal because conversion is "an inherently lesser included offense of theft." [DE 58 at 16, quoting *Morris v. State*, 921 N.E.2d 40, 42 (Ind.Ct.App. 2010)]. Indiana statutes define theft as a conversion plus the additional element of intent to deprive the victim of any part of the property's value or use. *See* Ind. Code §35-43-4-3(a) and 35-43-4-2(a). "Indeed, courts have consistently held that criminal conversion is an inherently lesser included offense of theft because it can be established by proof of less than all of the material elements of theft." *Lane v. State*, 953 N.E.2d 625, 630 n.4 (Ind.Ct.App. 2011). Because all the language defining conversion also appears within the language defining theft, the limits of the former tort also apply to the latter. If "the Plaintiff can't establish conversion, it necessarily can't establish theft either."

14

*Dillinger, LLC v. Electronic Arts Inc.*, 795 F.Supp.2d 829, 839 (S.D.Inc. 2011).   As with the conversion claim then, United's motion will be granted only as against Pratt's claim for theft of "funds, credits and/or benefits that would have otherwise been provided to Pratt," but not on its claim for theft of honest services.  [DE 54 at ¶73.]

**Crime Victims Compensation Act – Count IX**
**Aiding and Abetting Tortious Conduct – Count XI**

United's argument against Pratt's Indiana Crime Victims Compensation Act claim is also derivative, that is, United argues that because Pratt has failed to adequately plead a necessary underling tort predicate such as theft or conversion, the CVCA count fails to state a claim on which relief can be granted.  Because United has not defeated the conversion and theft claims as to Mendez's loyal services, its argument against Count IX does not succeed to the extent it is based on those claims.  Similarly, United's derivative argument against Count XI for aiding and abetting tortious conduct is unsuccessful because its arguments against Pratt's conversion and theft claims have not entirely succeeded.

**Civil Conspiracy – Count V**

"Although Indiana law does not recognize a cause of action for civil conspiracy as an independent tort, it does recognize civil conspiracy as a cause of action to recover damages resulting from concerted action in the commission of some other, independent tort." *Watkins v. Penn*, No. 1:06-cv-1473-JDT-TAB, 2007 WL 4224200, at *3 (S.D.Ind. Nov. 26, 2007)  I previously dismissed Pratt's conspiracy claim as against United because I

15

found that the underling counts for fraud and for aiding and abetting Mendez's breach of fiduciary duty failed to state a claim against United. [DE 46 at 18.] Those were the tort claims that Pratt relied upon to support the conspiracy claim as pleaded in the original complaint. [*Id.*; DE 30 at 17.]

The Amended Complaint repleads Count V for conspiracy against all the defendants. United now argues again that the claim as amended "should be dismissed because plaintiff has failed to adequately plead a valid underlying tort." [DE 58 at 17.] Because a portion of Pratt's conversion and theft claims survive this motion to dismiss, United's derivative challenge to the civil conspiracy claim fails. Furthermore, even though Pratt has not named United in its separate claim for fraud, Pratt argues that it can use civil conspiracy to seek liability for fraud damages against United because "although [the defendants'] actions *alone* might be insufficient to state a claim for fraud, their participation as conspirators in a larger scheme to defraud the Plaintiffs might nevertheless give rise to an action for civil conspiracy against them." *Watkins*, 2007 WL 4224200, at *3. [DE 62 at 18.] Count V is not subject to dismissal for failure to state a claim.

**ACCORDINGLY:**

Defendant United Transport, Inc.'s motion to dismiss the Amended Complaint [DE 57] is GRANTED IN PART as to Count III as against defendant United, and as to Counts VI and VII against United to the extent that those counts are based on "funds,

16

credits and/or benefits that would have otherwise been provided to Pratt Logistics." In all other respects, the motion is DENIED.

**SO ORDERED.**

ENTERED: March 10, 2022.

                                               /s/   Philip P. Simon
                                               UNITED STATES DISTRICT JUDGE